# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

WILLIAM WOODIE,                          :

    Plaintiff,                      :

                                             Case No. 3:06cv319

 vs.                                     :

                                             District Judge Thomas M. Rose

MICHAEL J. ASTRUE,                       :       Magistrate Judge Sharon L. Ovington
Commissioner of the Social
Security Administration,                 :

    Defendant.                      :

---

# REPORT AND RECOMMENDATIONS[1]

---

## I.      INTRODUCTION

In May 2002, certain physical ailments and pain led Plaintiff William Woodie to stop working.  (Doc. #6 at 2; *see* Tr. 203).  The following year, in July 2003, he applied to the Social Security Administration for Disability Insurance Benefits (DIB).

DIB is available to those who convince the Social Security Administration that they are under a "disability" (among other eligibility requirements).  *Bowen v. City of New York*, 476 U.S. 467, 470 (1986).  The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope.  It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

prevent them from engaging in substantial gainful activity.[2]

In the present case, after initial administrative denial of Plaintiff's DIB application, an Administrative Law Judge (ALJ) Melvin A. Padilla held a hearing, after which he concluded that Plaintiff was not under a disability. (Tr. 18-30). The ALJ consequently denied Plaintiff's DIB application. *Id*. That denial later became the Social Security Administration's final determination, and, as such, it is subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. #6), the Commissioner's Memorandum in Opposition (Doc. #7), Plaintiff's Reply (Doc. #8), the administrative record, and the record as a whole.

Plaintiff raises the following main issue:

> Whether the administrative law judge's finding concerning residual functional capacity, and hence, his finding that Mr. Woodie could perform other work, is supported by substantial evidence where the administrative law judge erred in his assessment of Treating Physician Gardner's opinion and other medical source opinion.

(Doc. #6 at 1, 12). Plaintiff seeks, at a minimum, a remand of this case to the Social Security Administration to correct certain errors. The Commissioner seeks an Order affirming the ALJ's decision.

---

[2] Impairments must also be either expected to cause death or last twelve months or longer. *See* 42 U.S.C. §423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70.

## II.    ADDITIONAL BACKGROUND

Plaintiff was fifty-one years old when the ALJ issued his decision, and he is therefore considered a person "closely approaching advanced age" for purposes of resolving his DIB claim.  *See* 20 C.F.R. §1563(d); *see also* Tr. 23.  He attended school through the eleventh grade, (Tr. 97), and his past employment involved factory work, primarily as a printing or stamping machine operator.  (Tr. 209).  Such work constitutes "light" work for social security purposes.[3]  *See* Tr. 29.

Plaintiff's physical problems began with his left knee when he tore his anterior cruciate ligament (ACL) beyond repair.  (Doc. #6 at 3).  The remnant of this ligament was excised surgically in 1981.  (Tr. 109).

In 1992 Plaintiff reported to a physician that he was experiencing left knee pain and instability.  (Tr. 110).  The physician who examined Plaintiff, noted marked instability upon ACL testing, and concluded, "X-rays of his knee were reviewed and essentially normal.  I feel that he probably has a chronic anterior cruciate ligament deficient knee."  (Tr. 110).

In 1999 another orthopedist examined Plaintiff and recognized that he obviously had "an ACL insufficient knee which is causing a lot of pain and discomfort and a lot of giving out...."  (Tr. 111).  This orthopedist recommended ACL reconstruction.  (Tr. 111).

---

[3]  Under the Regulations, "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...."  20 C.F.R. §404.1567(b).

Plaintiff was referred to  knee specialist, Frank P. Mannarino, M.D., who discussed a

ligament graft replacement to fix his knee, but Plaitniff did not want to undergo surgery

"until after the first of the year."  (Tr. 112).

By at least April 2000, Robert R. Gardner, D.O. was managing Plaintiff's medical

care.  (Doc. #6 at 3).[4]  By this time at least – probably much earlier –  Plaintiff had begun

to experience additional joint problems.  On April 4, 2000, Dr. Gardner diagnosed

traumatic arthrosis of the left knee, right shoulder, and left elbow.  (Tr. 141). Dr. Gardner

prescribed Relafen and Vicodin.  *Id*.  In July 2000, Dr. Gardner diagnosed the same areas

of arthrosis and further noted right shoulder crepetitis.  *Id*.  Dr. Gardner continued

Plaintiff on Relafen and Vicodin.  *Id*.

In April 2003, Plaintiff reported to Dr. Gardner that he was experiencing increased

joint pain in his hip and low back.  (Tr. 131).  X-rays revealed degenerative spondylosis

and mild degenerative disc disease, most marked at the L1-2 level; facet arthrosis mid-to-

lower lumbar spine; and advanced degenerative joint disease in the left elbow.  (Tr. 132-

33).  Around this time, Dr. Gardner completed a report to the Ohio Bureau of Disability

Determination (Ohio BDD) opining that Plaintiff suffered from degenerative spondylosis

and degenerative disc disease (DDD) of the lumbar spine, degenerative joint disease of

the left elbow from past trauma, and traumatic arthrosis of the left knee, right shoulder

and left elbow, along with "arthritis, generalized."  (Tr. 134).  Dr. Gardner noted that

---

[4] Dr. Gardner indicated on one form that he first saw Plaintiff in 1988.  (Tr. 134).

4

there was atrophy of the quads with the right quadricep measuring two centimeters more than the left.  (Tr. 134).  Dr. Gardner indicated that Plaintiff's "most valuable therapy is avoidance of  aggravating factors...," including no lifting, tugging, pushing; no pulling greater than 25 pounds; and no extensive walking, climbing or kneeling due to the left knee.  (Tr. 135).  He further noted that Plaitniff was unable to use his left arm completely. *Id*.  Dr. Gardner concluded that Plaintiff is "[u]nable to perform physical work requiring use of arms or legs against resistance or lifting, tugging, pushing, pulling."  *Id*.

Dr. Gardner's opinion about Plaintiff's work ability is contradicted by record-reviewing physician, Dr. Cindi Lynn Hill.  (Tr.113-14).  In August 2003, Dr. Hill opined to the Ohio BDD that Plaintiff could perform light exertional work with certain restrictions, namely, he was limited to never balancing and to occasionally stooping, kneeling, crouching, crawling, and reaching overhead.  (Tr. 115).

In March 2004, Dr. Gardner completed a second report stating that Plaintiff could perform sedentary job activities on a regular eight-hour workday schedule "provided he is able to periodically rise from sitting positions; he can ambulate short distances & is able to change positions while sitting.  He cannot operate foot controls repetitively, but is able to drive."  (Tr. 122).  Dr. Gardner noted that on any single occasion during an eight-hour workday, Plaintiff could sit without interruptions for two hours.  (Tr. 124).

Dr. Gardner further indicated that Plaintiff's right shoulder and left elbow arthrosis limited his lifting ability. (Tr. 123).  Dr. Gardner further opined:

Mr. Woodie is limited in ambulatory capacity due to knee arthrosis

5

> and is limited in lifting, carrying, pushing, or pulling greater than 10
> [pounds] due to [left] elbow, and [right] shoulder and lumbar spine
> conditions.  Mr. Woodie is however, able to engage in sedentary activity
> not requiring physical exertion.

(Tr. 121).  Dr. Gardner provided additional information (Tr. 119-27) and concluded, "Mr.

Woodie is basically capable to [sic] perform desk job activities [and/or] supervisory

duties, requiring minimal physical effort."  (Tr. 127).

By November, 2004, Plaintiff's condition had worsened, according to Dr.

Gardner's records.  He noted that Plaintiff walked with a limp, and Plaintiff reported that

he used a heating pad all day and that he could barely perform any activities of daily

living.  Dr. Gardner's office notes revealed that Plaintiff was tender in the left elbow and

there was decreased range of motion.  (Tr. 143).  There was also a decreased range of

motion in the right shoulder.  Plaintiff was still having pain in the back and pain in the left

knee with crepitus.  On November 24, 2006, Dr. Gardner's office notes state:  Plaintiff is

"totally & permanently disabled to perform <u>any</u> remunerative job duties."  (Tr.

143)(emphasis in original).

During the ALJ's hearing, Plaintiff testified that he cannot work because he has

trouble walking and bending, with pain in his back, leg, hip, and feet.  (Tr. 188-89).  He

experienced daily pain in his lower spine, and he felt as if somebody was digging

something into his lower spine.  (Tr. 189).  The pain in his hip comes and goes, but it

feels as if it "pops."  (Tr. 190).  The pain in his heels makes it extremely painful to walk.

*Id*.  He estimated that he could only walk one to two blocks, stand ten minutes, or sit one

hour at a time.  (Tr. 193).  He noted that even lifting a gallon of bleach is problematic for him.  He is most comfortable in his recliner.  (Tr. 194).  Plaintiff could do chores, including running the sweeper, but not without pain.  (Tr. 195).  He also has to slow down his pace for doing chores.  (Tr. 202). Plaintiff further testified that he started using all plastic dishes because he kept breaking his dishes.  *Id*.

The record contains the opinions of two examining physician, Drs. Duritsch and Vitols.  Dr. Duritsch essentially indicated in his February 2005 report that Plaintiff could perform a limited range of light work.  (Tr. 145-53).  Two months later, in April 2005, Dr. Vitols examined Plaintiff, reviewed his medical records, and wrote:

> This claimant presents with a multitude of clinical findings both in the upper and lower extremities as well as his lumbar spine.  Claimant has lost any residual ability to use his left arm on a regular basis due to left elbow pain, fibroarthrosis and weakness.  Likewise he has an ability to use his right hand or wrist for sustained work-related activities due to a first dorsal compartment tenosynovitis.
>
> Claimant does not have any physical capabilities to bend, twist at the waist on a regular basis.  He is able to walk and stand for short periods of time.  He is unable to handle or carry materials of any weight at all.  He is likewise unable to stand or walk due to the bilateral plantar fasciitis, instability and pain in his left knee.
>
> When one considers that sum total of these clinical presentations that involve all four extremities and the spine, it is my professional medical opinion within the realm of medical probabilities that the combination of these impairments render the claimant to be unable to perform substantial gainful activity on a competitive basis.  Claimant's disability has been present since 5-2-2002 and has persisted up to the present time and will continue indefinitely.

(Tr. 170-71).  Dr. Vitols also expressed similar opinions in the form he attached to his

report. (Tr. 171-77). He explained that he formulated those opinions "based on the review of the claimant, the clinical objective findings of the examination and review of the record...." (Tr. 171).

## III.    STANDARDS OF REVIEW AND THE ALJ'S DECISION

### A.    The Social Security Act and
   Standards of Judicial Review

Judicial review of an ALJ's decision proceeds along two lines: whether substantial evidence in the administrative record supports the ALJ's factual findings and whether the ALJ "applied the correct legal criteria." *Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

"Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F.3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "'more than a scintilla of evidence but less than a preponderance....'" *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review of the administrative record and the ALJ's decision is not *de novo*. *See Cutlip v. Secretary of Health and Human Servs.*, 25 F3d 284, 286 (6th Cir. 1994). The required analysis is not driven by whether the Court agrees or disagrees with an ALJ's factual findings or by whether the administrative record contains evidence contrary to those findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld "as long as they are

supported by substantial evidence." *Rogers*, 486 F.3d at 241 (citing *Her*, 203 F.3d at 389-90).

The second line of judicial inquiry – reviewing the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *See Bowen*, 478 F.3d at 746. This occurs, for example, when the ALJ has failed to follow the Commissioner's "own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing in part *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### B. <u>Administrative Evaluation Of Disability Claims</u>

The Commissioner has developed five sequential questions to determine if an individual is under a "disability":

1.  Is the claimant engaged in substantial gainful activity?

2.  Does the claimant suffer from one or more severe impairments?

3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.  Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir.

2007); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).  If the ALJ makes "a

dispositive finding at any point in the five-step process, the review terminates."  *Colvin*,

475 F.3d at 730 (citations omitted).

      **C.**      **The ALJ's Decision**

      The parties' dispute concerns the ALJ's assessment of Plaintiff's residual

functional capacity at Step 4 of the sequential evaluation where the ALJ concluded:

> The claimant can lift up to twenty pounds occasionally and ten
> pounds frequently; he must have the option to alternate positions as needed;
> balancing, stooping, crouching, kneeling, and crawling are limited to
> occasionally; handling and fingering with the right, dominant hand are
> limited to frequently as opposed to constantly; and he must avoid overhead
> reaching with his left arm.

(Tr. 29).  The ALJ then determined, at Step 5, that Plaintiff's ability to perform a limited

range of light work enables him to perform a significant number of such jobs (and

sedentary jobs) that are available in the regional and national economies.  (Tr. 30).

      The ALJ's findings throughout the sequential evaluation led him to deny

Plaintiff's DIB application based on the ultimate conclusion that Plaintiff was not under a

disability.  (Tr. 29-30).

      **IV.**    **DISCUSSION**

      **A.**      **The Parties' General Contentions**

Plaintiff asserts that he became disabled from at least June 2004 when he turned

age fifty.  He contends that under the Commissioner's Medical-Vocational Guidelines (the "Grids"), he "is disabled at age 50 even if he could perform the full range of sedentary work...."  (Doc. #6 at 12) (citing Grid Rule 201.02, 20 C.F.R, Part 404, Appendix 2 to Subpart P).  Plaintiff further contends that the ALJ erred by rejecting the opinions of his treating physician, Dr. Gardner, and an examining physician, Dr. Vitols, and by instead accepting the opinions of Dr. Duritsch.

The Commissioner argues that the ALJ properly weighed the medical source opinions of record under various factors permitted by the Regulations, and properly credited Dr. Duritsch's opinions rather than those of Drs. Gardner or Vitols.  The Commissioner also argues that substantial evidence supported both the ALJ's application of the regulatory factors and the ALJ's determination that Plaintiff  had the RFC to perform a limited range of light work.

### B.   <u>Analysis</u>

### 1.

Resolution of the parties' dispute over the medical source opinions begins with the treating physician rule.  When applicable, the treating physician rule requires ALJs to place controlling weight on a treating physician's opinion rather than favoring the opinions of a non-treating physician.  *Wilson v. Comm'r. of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004); *see Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1054 (6th Cir. 1983); *see also* 20 C.F.R. §404.1527(d)(2), (f).  The treating

11

physician's opinion must have two characteristics before the treating physician rule applies: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; (2) the opinion "is not inconsistent with other substantial evidence of record."  20 C.F.R. §404.1527(d)(2); *see Wilson*, 378 F.3d at 544.

If a treating physician's opinion is not given controlling weight, the ALJ must continue to weigh it under a number of factors set forth in the Regulations – "namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion."  *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. §404.1527(d)(2)).[5]

The Commissioner's Regulations further mandate, "We will always give good reasons in our notice of determination of decision for the weight we give [the claimant's] treating source's opinion."  *Wilson*, 378 F.3d at 544 (quoting 20 C.F.R. §404.1527(d)(2)).

---

[5]  Speaking through the Rulings, the Commissioner has emphasized the importance of this continued weighing as follows:

> Adjudicators must remember that a finding that a treating source's medical opinion is not well-supported by medically acceptable clinical and laboratory techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §404.1527....  In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Social Security Ruling 96-2p.

The Court of Appeals further explained in *Wilson*:

> A Social Security Ruling explains that ... a decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight the adjudicator gave to the treating source medical opinion and the reason for that weight.'

378 F.3d at 544 (quoting in part Soc. Sec. Ruling 96-2p, 1996 WL 374188 at *5 (1996)).

In sum, to apply the correct legal standards, an ALJ's decision to reject a treating physician's opinion must be based on good and specific reasons (1) why the treating physician rule does not apply and (2) why one or more of the remaining regulatory factor(s) led the ALJ to place no significant weight on the treating physician's opinion. *See Rogers*, 486 F.3d at 242; *see also Wilson*, 378 F.3d at 544.

**2.**

The ALJ rejected Dr. Gardner's opinions as follows:

> Dr. Gardner is a family physician who sees the claimant a few times a year at most and prescribes medication. While he is the only treating source of record, he does not provide specific objective findings or evidence of diagnostic imaging tests to support the degree of limitation he has suggested. For this reason and based on the discussion below, his opinion that the claimant is limited to sedentary work (or possibly no work at all) is not accepted.

(Tr. 24). The ALJ's reference to his "discussion below" pointed to (1) his rejection of Dr. Vitols' opinions, (2) his crediting Dr. Duritsch's opinions, and (3) his conclusion that Plaintiff's descriptions of his pain levels were not credible. (Tr. 24-27).

Plaintiff correctly points out that the ALJ did not mention or describe the treating physician rule at any point in his decision.  *See* Tr. 18-30.  The ALJ also did not cite to the Regulation describing this rule, 20 C.F.R §404.1527(d)(2), or to any case or other source identifying or applying this rule.  *See id*.  The ALJ also did not separately mention the continued-weighing requirement set forth in §404.1527(d) and further explained in Social Security Ruling 96-2p and recognized in caselaw, *e.g.*, *Rogers*, 486 F.3d at 221; *Bowen*, 478 F.3d at 747; *Wilson*, 378 F.3d at 441.

Yet this failure by itself does not constitute an error of law.  Neither the Regulations nor caselaw require an ALJ to separately state his understanding of the controlling legal criteria – although such statements would doubtlessly assist claimants and subsequent reviewers in gaining a full and accurate understanding of the legal criteria applied by the ALJ.  Without such a separate statement or, at a minimum, a citation to the specific Regulation(s) applied by the ALJ, the ALJ's decision must be scrutinized to determine what legal criteria the ALJ actually applied to resolve whether the ALJ "applied the correct legal criteria."  *Bowen*, 478 F.3d at 745-46.  Doing so in the present case reveals that the ALJ did not weigh the opinions of Dr. Gardner, Dr. Vitols, or Dr. Duritsch under the correct legal standards.

The first problem with the ALJ's decision arises from the jumble of conclusory reasons he provided for rejecting Dr. Gardner's opinions without a single citation or reference to the treating physician rule, to the applicable Regulation, to the applicable Social Security Rulings, or to applicable case law.  *See* Tr. 24-25.  Without such a

14

reference, and without a separate statement by the ALJ of the legal criteria he applied, the

ALJ's decision does not sufficiently indicate that he rejected Dr. Gardner's opinions after

weighing it along the two lines mandated by the Regulations:  the first line requiring the

ALJ to consider the treating physician rule under the standards in §404.1527(d)(2); the

second line requiring the ALJ to consider the remaining factors as §404.1527(d)(2)-(6)

require.  *See supra*, §IV(B)(1) (and sources cited therein).  Rather than weighing Dr.

Gardner's opinions in this manner, the ALJ improperly combined these two lines of

weighing.  This is seen in his brief conclusions that Dr. Gardner "does not provide

specific objective findings or evidence of diagnostic imaging tests to support the degree

of limitation he has suggested.  For this reason and based on the discussion below, his

opinion that the claimant is limited to sedentary work (or possibly no work at all) is not

accepted."  (Tr. 24).  At best for the Commissioner, this constituted a legally valid basis

for not applying the treating physician rule to Dr. Gardner's opinion.  This, however, is

merely the first line of administrative inquiry.  The ALJ's decision does not contain any

indication that he considered or weighed Dr. Gardner's opinion under any of the

remaining regulatory factors.

It is tempting to overlook this error, since it reiterates one element of the treating

physician rule, and since doing so would simplify administrative review of treating

physician's opinions as well as subsequent judicial review.  Yet the required legal criteria

set forth in the Regulations demands more through both its two-line weighing and its

instruction to ALJs to provide good and specific reasons for rejecting a treating

15

physician's opinions.  *See Rogers*, 486 F.3d at 242; *see also Wilson*, 378 F.3d at 544.

Scrutinizing the ALJ's decision for additional possible reasons for rejecting Dr. Gardner's opinion, the ALJ's more generalized reference to "the discussion below" might suffice if that discussion contains a better explanation of the ALJ's legal criteria. It does not.

The ALJ's rejection of Dr. Gardner's opinion is not supported by his reference to his "discussion below," because the ALJ's "discussion below" did not apply the correct legal standards.  In the "discussion below," the ALJ accepted Dr. Duritsch's opinion. (Tr. 25-26).  But, the ALJ did not provide a meaningful explanation for his acceptance of Dr. Duritsch's opinion that Plaintiff could perform a limited range of light work, upon which the ALJ based his RFC assessment.  *See* Tr. 25.  The ALJ did not refer or cite to the applicable Regulation and instead merely described Dr. Duritsch's assessment of Plaintiff's physical capacity.  The ALJ mentioned in passing, Dr. Duritsch's speciality – "Dr. Duritsch, a physiatrist, who..." (Tr. 25)[6] – but did not indicate whether this specialty – or any other reason – led him to credit Dr. Duritsch's opinions.  *See* Tr. 25.  Indeed, the ALJ provided no explanation of why he credited this one-time examiner's opinions over that of treating physician, Dr. Gardner.

The ALJ's error creates an additional problem due to the ALJ's reliance on Dr. Duritsch's opinion as a reason for rejecting Dr. Vitols' opinions.  *See* Tr. 25.  The ALJ's

---

[6]  "A physiatrist ... is a physician specializing in physical medicine and rehabilitation. Physiatrists treat a wide range of problems from sore shoulders to spinal cord injuries...." http://www.aapmr.org.

16

error is revealed when his analytical approach is outlined:  First, the ALJ credited Dr.

Duritsch's opinions without weighing them under the required regulatory factors; then,

the ALJ relied on Dr. Duritsch's opinions as a reason to reject Dr. Vitols' opinions.

Nothing in the Regulations permitted the ALJ to use one unweighed set of medical source

opinions as the basis for rejecting another medical source opinion.  The Regulations

instead required the ALJ to consider and weigh these medical sources opinions under the

regulatory factors.  *See* 20 C.F.R. §§404.1527(d)(2)-(5), (f)(2).

In addition, the ALJ's review of Dr. Vitols' opinion overlooks certain aspects of

the information Dr. Vitols provided.  For example, the ALJ stated that Dr. Vitols did not

identify specific tests or test findings, "such as specific degrees of limitation of motion or

dynamometer testing."  (Tr. 26).  Yet, Dr. Vitols, referring to Plaintiff's left knee, noted

that Lachman's test was +2 with no endpoint.  (Tr. 169).  Dr. Vitols also detailed x-ray

results from April 2003 and other medical findings and diagnoses of record.  (Tr. 169-70).

He then explained:

> This claimant has sustained an injury to his left knee and left elbow.
> The left elbow has resulted in chronic pain, weakness and fibroarthrosis.
> Claimant has degenerative arthrosis of the lumbar spine with painful
> restricted motion.  Claimant has a deficient ACL left knee with instabilities,
> pain and joint effusion.  Pain, positive Finkelstein and Tinel's have been
> identified of the right dorsal compartment.  Pain has been identified over
> the left greater trochanter and bilateral heel pain at the plantar fascia
> attachment....

(Tr. 170).  Dr. Vitols further explained, "This claimant presents with a multitude of

clinical findings both in the upper and lower extremities as well as the lumbar spine.

17

Claimant has lost any residual capacity to use his left arm on a regular basis due to left elbow pain, fibroarthrosis and weakness...." *Id*.  Dr. Vitols' opined that Plaintiff was unable to handle or carry any weight, and he was "unable to stand or walk due to the bilateral fasciitis, instability and pain in the left knee...." (Tr. 171).  Dr. Vitols' report also detailed the results of tests he performed including range or motion testing and he relied on these test results to support his opinions.  (Tr. 168-171).  These aspects of Dr. Vitols' detailed report, *see id*., contradict the ALJ's conclusion that Dr. Vitols' report lacked specific tests or test findings (Tr. 26).

There remains the possibility that the ALJ's errors were harmless, an issue neither party specifically addresses.  *See Bowen*, 478 F.3d at 747-49.  A review of the opinions provided by Drs. Gardner and Vitols reveals that their supporting explanations provided at least one regulatory reason for crediting their opinions.  *See* Tr. 119-122, 170-171. Consequently, their opinions were not so patently deficient that they could not be credited, *see Wilson*, 378 F.3d at 547, and this is not the "rare case"[7] in which a violation of 20 C.F.R. 404.1527(d)(2) can be deemed harmless.

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.

## V.    REMAND IS WARRANTED

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case

---

[7] *Bowen*, 478 F.3d at 748.

for rehearing or to reverse and order an award of benefits.  Under sentence four of  42

U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's

decision "with or without remanding the cause for rehearing."  *Melkonyan v. Sullivan*,

501 U.S. 89, 99 (1991).  Remand is appropriate if the Commissioner applied an erroneous

principle of law, failed to consider certain evidence, failed to consider the combined

effect of impairments, or failed to make a credibility finding.  *Faucher v. Secretary of

H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

Plaintiff contends that a judicial award of benefits is warranted at least for the

period after he turned age fifty because at this point even if he could perform a full range

of sedentary work, he would be disabled under the Grid Rule 201.02.  This contention

lacks merit because Dr. Duritsch's opinion, if accepted, would establish that Plaintiff

could perform a limited range of light work.  In addition, given the evidentiary conflict

between Dr. Duritsch's opinions and those of Drs. Gardner and Vitols, a judicial award of

benefits is unwarranted because the evidence of Plaintiff's disability is not overwhelming

and because the evidence of a disability is not strong while contrary evidence is weak.

*See Faucher*, 17 F.3d at 176.

Plaintiff, however, is entitled to an Order remanding this case to the Social

Security Administration for further proceedings pursuant to Sentence Four of §405(g) due

to the ALJ's failure to weigh the medical source opinions of record as required by the

Regulations.  On remand, the Commissioner and the ALJ should be directed to (1) re-

evaluate the medical source opinions under the legal criteria set forth in the

19

Commissioner's Regulations, Rulings, and as required by caselaw; (2) to explain the evaluation of the medical sources as required by the Regulations, Rulings, and case law; and (3) to determine anew whether Plaintiff is under a "disability" within the meaning of the Social Security Act.

Accordingly, the case must be remanded to the Commissioner and the ALJ under Sentence Four of 42 U.S.C. §405(g) for further proceedings consistent with this Report and Recommendations.

## IT IS THEREFORE RECOMMENDED THAT:

1.      The Commissioner's non-disability finding be vacated;

2.      No finding be made as to whether Plaintiff William Woodie is under a "disability" within the meaning of the Social Security Act;

3.      This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report;

4.      The case be terminated on the docket of this Court.


January 30, 2008

    s/ Sharon L. Ovington
Sharon L. Ovington
United States Magistrate Judge

20

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).