# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| WILLIAM WOODIE, | : | |
| Plaintiff, | : | Case No. 3:06CV0319 |
| vs. | : | District Judge Thomas M. Rose<br>Magistrate Judge Sharon L. Ovington |
| MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration, | :<br><br>: | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

**I.    INTRODUCTION**

The Equal Access to Justice Act ("EAJA") requires the Government to pay a prevailing Social Security plaintiff's attorney fees "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. §2412(d)(1)(A). The parties in the instant case dispute whether the Government must pay Plaintiff William Woodie's attorney fees under the EAJA. (Doc. #s 12, 13).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

## II. PROCEDURAL BACKGROUND

Previously in this case, the Court vacated an Administrative Law Judge's ("ALJ's") non-disability decision and, invoking sentence four of 42 U.S.C. §405(g), remanded the case to the Social Security Administration for further proceedings. (Doc. #s 9, 10). Plaintiff thereafter filed his presently pending Motion seeking an award of attorney fees under the EAJA totaling $2,592.45.

Plaintiff contends that the Commissioner's support for the Administrative Law Judge's (ALJ's) decision was not substantially justified mainly because, as pointed out in the Report and Recommendations, the ALJ failed to apply the correct legal standards by not following the Commissioner's own Regulations when considering the opinions of the treating medical sources.

The Commissioner contends that his position in support of the ALJ's decision was reasonable because there is no mandate in Regulations or case law requiring the ALJ to articulate a two-step analysis of a treating medical source's opinion, and because the ALJ's decision provided sufficient "good reasons" as required under the Regulations when rejecting a treating medical source's opinions. For these reasons, according to the Commissioner, his support of the ALJ's decision was reasonable and thus substantially justified.

## III. DISCUSSION

### A. Attorney Fees under the EAJA

"[S]ubstantially (*i.e.*, for the most part) justified...," under the EAJA, denotes a position that is "'justified in substance or in the main' – that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Howard v. Barnhart*, 376 F.3d 551, 554 (6th Cir. 2004). A reasonable person could find the Commissioner's position substantially justified if it rested on "a reasonable basis in law and fact." *Pierce*, 487 U.S. at 566 n.2; *see Howard*, 376 F.3d at 554. Even if it ultimately lacked merit, if the Government's position rested on a reasonable basis in law and fact, it meets the substantial justification standard. *See Pierce*, 487 U.S. at 566 n.2; *see also Howard*, 376 F.3d at 554.

The EAJA places the burden on the Government to demonstrate that its position was substantially justified. *See Healey v. Leavitt*, 485 F.3d 63, 67 (2nd Cir. 2007); *see also Hackett v. Barnhart*, 475 F.3d 1166, 1169 (10th Cir. 2007)(courts have "uniformly recognized" that this burden "must be shouldered by the Government.").[2]

**B.** **Analysis**

The parties focus on the Commissioner's support for the ALJ's decision to reject the opinions of Dr. Gardner, Plaintiff's treating physician. The Commissioner emphasizes that his support for the ALJ's rejection of Dr. Gardner's opinions was reasonable in light of the many reasons provided by the ALJ, which sufficiently complied

---

[2] *Conrad v. Barnhart*, 434 F.3d 987, 990 (7th Cir. 2006); *Goad v. Barnhart*, 398 F.3d 1021, 1025 (8th Cir. 2005); *Gutierrez v. Barnhart*, 274 F.3d 1255, 1258 (9th Cir. 2001); *Lively v. Bowen*, 858 F.2d 177, 180 (4th Cir. 1988).

with the Regulations and case law.

A review of the ALJ's decision and the Commissioner's Memorandum in Opposition (Doc. #7) to Plaintiff's Statement of Errors reveals that the Commissioner unreasonably overlooked the ALJ's failure to apply the correct legal criteria when rejecting Dr. Gardner's opinions. The prior explanation of this (in the Report and Recommendations) bears repeating and likewise establishes that the Commissioner's present search for substantial justification lacks merit:

> The first problem with the ALJ's decision arises from the jumble of conclusory reasons he provided for rejecting Dr. Gardner's opinions without a single citation or reference to the treating physician rule, to the applicable Regulation, to the applicable Social Security Rulings, or to applicable case law. *See* Tr. 24-25. Without such a reference, and without a separate statement by the ALJ of the legal criteria he applied, the ALJ's decision does not sufficiently indicate that he rejected Dr. Gardner's opinions after weighing it along the two lines mandated by the Regulations: the first line requiring the ALJ to consider the treating physician rule under the standards in §404.1527(d)(2); the second line requiring the ALJ to consider the remaining factors as §404.1527(d)(2)-(6) require.... Rather than weighing Dr. Gardner's opinions in this manner, the ALJ improperly combined these two lines of weighing. This is seen in his brief conclusions that Dr. Gardner "does not provide specific objective findings or evidence of diagnostic imaging tests to support the degree of limitation he has suggested. For this reason and based on the discussion below, his opinion that the claimant is limited to sedentary work (or possibly no work at all) is not accepted." (Tr. 24). At best for the Commissioner, this constituted a legally valid basis for not applying the treating physician rule to Dr. Gardner's opinion. This, however, is merely the first line of administrative inquiry. The ALJ's decision does not contain any indication that he considered or weighed Dr. Gardner's opinion under any of the remaining regulatory factors.
>
> It is tempting to overlook this error, since it reiterates one element of the treating physician rule, and since doing so would simplify administrative review of treating physician's opinions as well as subsequent

judicial review. Yet the required legal criteria set forth in the Regulations demands more through both its two-line weighing and its instruction to ALJs to provide good and specific reasons for rejecting a treating physician's opinions. *See Rogers*, 486 F.3d at 242; *see also Wilson*, 378 F.3d at 544. Scrutinizing the ALJ's decision for additional possible reasons for rejecting Dr. Gardner's opinion, the ALJ's more generalized reference to 'the discussion below' might suffice if that discussion contains a better explanation of the ALJ's legal criteria. It does not.

The ALJ's rejection of Dr. Gardner's opinion is not supported by his reference to his "discussion below," because the ALJ's "discussion below" did not apply the correct legal standards. In the "discussion below," the ALJ accepted Dr. Duritsch's opinion. (Tr. 25-26). But, the ALJ did not provide a meaningful explanation for his acceptance of Dr. Duritsch's opinion that Plaintiff could perform a limited range of light work, upon which the ALJ based his RFC assessment. *See* Tr. 25. The ALJ did not refer or cite to the applicable Regulation and instead merely described Dr. Duritsch's assessment of Plaintiff's physical capacity. The ALJ mentioned in passing, Dr. Duritsch's speciality – 'Dr. Duritsch, a physiatrist, who...' (Tr. 25) – but did not indicate whether this specialty – or any other reason – led him to credit Dr. Duritsch's opinions. *See* Tr. 25. Indeed, the ALJ provided no explanation of why he credited this one-time examiner's opinions over that of treating physician, Dr. Gardner.

The ALJ's error creates an additional problem due to the ALJ's reliance on Dr. Duritsch's opinion as a reason for rejecting Dr. Vitols' opinions. *See* Tr. 25. The ALJ's error is revealed when his analytical approach is outlined: First, the ALJ credited Dr. Duritsch's opinions without weighing them under the required regulatory factors; then, the ALJ relied on Dr. Duritsch's opinions as a reason to reject Dr. Vitols' opinions. Nothing in the Regulations permitted the ALJ to use one unweighed set of medical source opinions as the basis for rejecting another medical source opinion. The Regulations instead required the ALJ to consider and weigh these medical sources opinions under the regulatory factors. *See* 20 C.F.R. §§404.1527(d)(2)-(5), (f)(2).

In addition, the ALJ's review of Dr. Vitols' opinion overlooks certain aspects of the information Dr. Vitols provided. For example, the ALJ stated that Dr. Vitols did not identify specific tests or test findings, 'such as specific degrees of limitation of motion or dynamometer testing.' (Tr. 26). Yet, Dr. Vitols, referring to Plaintiff's left knee, noted that

5

> Lachman's test was +2 with no endpoint. (Tr. 169). Dr. Vitols also
> detailed x-ray results from April 2003 and other medical findings and
> diagnoses of record. (Tr. 169-70). He then explained:
>
>> This claimant has sustained an injury to his left knee
>> and left elbow. The left elbow has resulted in chronic pain,
>> weakness and fibroarthrosis. Claimant has degenerative
>> arthrosis of the lumbar spine with painful restricted motion.
>> Claimant has a deficient ACL left knee with instabilities, pain
>> and joint effusion. Pain, positive Finkelstein and Tinel's have
>> been identified of the right dorsal compartment. Pain has
>> been identified over the left greater trochanter and bilateral
>> heel pain at the plantar fascia attachment....
>
> (Tr. 170). Dr. Vitols further explained, 'This claimant presents with a
> multitude of clinical findings both in the upper and lower extremities as
> well as the lumbar spine. Claimant has lost any residual capacity to use his
> left arm on a regular basis due to left elbow pain, fibroarthrosis and
> weakness....' *Id*. Dr. Vitols' opined that Plaintiff was unable to handle or
> carry any weight, and he was 'unable to stand or walk due to the bilateral
> fasciitis, instability and pain in the left knee....' (Tr. 171). Dr. Vitols'
> report also detailed the results of tests he performed including range or
> motion testing and he relied on these test results to support his opinions.
> (Tr. 168-171). These aspects of Dr. Vitols' detailed report, *see id*.,
> contradict the ALJ's conclusion that Dr. Vitols' report lacked specific tests
> or test findings (Tr. 26).

(Doc. #9 at 14-18)(footnotes omitted). For these reasons, the Commissioner's support for the ALJ's decision was not reasonable as a matter of law or fact and hence not substantially justified. Given this conclusion, there is no need to specifically address Plaintiff's remaining contention that this particular ALJ (Melvin A. Padilla) "engaged in an extremely biased approach to decision making...." (Doc. #12 at 3).

6

Accordingly, Plaintiff's Motion for Attorney Fees is well taken.[3]

## IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff's Motion For Attorney Fees Under Equal Access To Justice Act, 28 U.S.C. §2412(d) (Doc. #12) be GRANTED;

2. Plaintiff be granted an award of attorney fees under the EAJA in the amount of $2,592.45; and

3. The case remain terminated on the docket of this Court.


October 20, 2008					s/ Sharon L. Ovington
							Sharon L. Ovington
							United States Magistrate Judge

---

[3] The Commissioner has not challenged as unreasonable the amount of attorney fees requested by Plaintiff under the EAJA. (Doc. #16 at 2-9).

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).